## Julius Barnes and Julius Barnes, Jr., Trading as Julius Barnes & Co., Defendants in Error, v. Independent Peerless Pattern Company, Plaintiff in Error.

### Gen. No. 18,271.

1. CONTRACTS—*construction.* An ambiguity or uncertainty in the meaning of the terms of a contract is construed against the party employing them.

2. CONTRACTS—*providing for return of patterns.* In an action to recover the surrender value of certain patterns, returned by plaintiff to the defendant, a provision in the contract providing that defendant should pay for all patterns "returned in good salable condition" will be held to apply to the external physical condition of the patterns and not to include only patterns retained by defendant in its semi-annual list as live patterns.

Error to the Municipal Court of Chicago; the Hon. THOMAS F. SCULLY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1912. Affirmed. Opinion filed May 9, 1913.

COLSON & JOHNSON, for plaintiff in error.

BOWERSOCK & STILWELL, for defendants in error.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

An action was brought by defendants in error, hereinafter called plaintiffs, against the plaintiff in error, hereinafter called defendant, to recover the surrender value of certain patterns that were returned to the defendant by the plaintiffs under and by virtue of a written contract entered into between the parties April 1, 1907. Judgment was rendered for $103.03 for the plaintiffs.

By the contract the defendant agreed, among other things, to supply the plaintiffs with Peerless patterns at half their retail prices, and Peerless fashion guides and catalogues at certain prices set forth in the con-

tract. The defendant, by the contract, further agreed to receive from the plaintiffs in the months of January or February and in July or August any patterns purchased under the agreement which were discarded and recalled by the defendant in exchange at even rates for other patterns to be shipped thereafter. The plaintiffs, on their part, agreed to purchase from the defendant and keep on hand a stock of Peerless patterns amounting to $300 at the above quoted wholesale prices, and agreed further that a balance of $150, part of the purchase price of the patterns, should stand unpaid on the books of the defendant to bear interest at the rate of 3 per cent. per annum, and to become due and payable at the termination of the agreement. The plaintiffs further agreed to return any patterns discarded for exchange direct to the general office of the defendant in New York. The concluding paragraph of the contract was as follows:

"Both parties agree that there are no verbal understandings to conflict with the terms of this agreement and that it shall remain in operation for a term of three years from date of first shipment hereunder and from term to term thereafter, unless either party shall give notice to cancel, in writing, within thirty days after the expiration of any term. If such notice is given it is further mutually agreed that the business shall continue in full operation for three months thereafter and that the merchant shall then return to the manufacturer in New York City, all patterns on hand, supplied under this agreement and, all obligations hereunder having been complied with by the merchant, the manufacturer shall pay within thirty days after delivery, for all patterns in good salable condition ninety per cent. of the wholesale price charged for same."

Plaintiffs set forth in their statement of claim that they returned at the termination of the contract 5,303 patterns for which they claimed credit under the contract, after allowing proper credit to defendant for

the standing credit of $150 and all other counter-claims, the sum of $103.03. The defense as set forth by the affidavit of merits filed by the defendant, is that according to the terms of the contract plaintiffs were entitled to be paid for patterns returned in good salable condition; that plaintiffs returned but 2,983 patterns in good salable condition, and are indebted to defendant for a standing credit of $150 with interest at three per cent., also for transportation or freight charges, and that there is due the defendant from the plaintiffs $17.68.

The main controversy in this case is based upon the construction of the contract and particularly of the paragraph above quoted. It is clear from the affidavits which were filed in place of pleadings that the only question presented to the court was the number of patterns for which the plaintiffs were entitled to credit under the terms of the contract. No other defense is suggested by the affidavit. All other defenses are, therefore, waived. By the issue thus formed, the defense sought to be presented is that the plaintiffs are not entitled to credit for all patterns returned as set forth in the plaintiffs' statement of claim. It is contended by the defendant that the terms "good salable condition," as used in the contract, include only the patterns which had not been by the semi-annual discard list published by the defendant, marked as discarded patterns; in other words, that "good salable condition," as used in the contract, includes only the patterns which have been retained by the defendant upon its semi-annual list as live patterns.

The evidence shows that it was the custom of the Pattern Company to issue an inventory book or list of patterns made up by experts employed by the company, who decided which patterns would not likely find a ready sale owing to change of style or for other reasons, and such patterns were omitted from the list and were denominated "discarded" or "recalled"

patterns. These inventories were sent by mail to the merchants about the first week of January or July respectively, and at these periods the merchants under their contracts would exchange such patterns, if they had any on hand which were not contained in the printed list, at even rates for other patterns to be shipped by the Pattern Company. The question is whether the terms used, in "good salable condition," are to be limited to the pattern retained in the semi-annual catalogues or whether they are to be construed as referring to the external physical condition of the patterns whether retained in the catalogues or were discarded patterns.

The contract is the standard form of contract prepared by the defendant, and is the one used by it and all its customers. It is printed by the defendant and sent out to its agents to be used by them. Hence the words employed in the contract have been selected by the defendant and have not been chosen by the plaintiffs, and if there is any ambiguity or uncertainty in the meaning of the terms employed, under the law the contract must be construed against the party employing them. But we think that it is unnecessary to refer to that principle of construction in this case, for the business considered and all the facts and circumstances shown in evidence, the contract must be construed as entitling the plaintiffs to credit for all patterns returned, whether such patterns are retained in the catalogue list or whether they have been discarded by the defendant, at ninety per cent. of the wholesale price charged for them by the defendant. To construe the contract otherwise would enable the defendant to make an absolute sale to plaintiffs of all patterns furnished the plaintiffs by the defendant by simply resorting to the one-sided action of marking the patterns as discarded, for the plaintiffs had no voice in determining that question. That was not the intention of the parties and the language of the contract does not so express the agreement. The trial court was right, there-

fore, in allowing credit to the plaintiffs for the discarded patterns returned by them.

There is some controversy in the testimony as to the number of patterns returned. We see no reason for disturbing the finding of the court in favor of the plaintiffs as to the number of patterns actually returned. The testimony of the witness Hacker on behalf of the plaintiffs shows that he counted the patterns carefully three times before shipping them, and that he had been in the employment of the plaintiffs fourteen years. The testimony of Miss Burnett for the defendant is the only testimony contradicting the witness Hacker. Miss Burnett had very little experience in the work which she was employed to do, and we cannot say that her count of the patterns was more reliable than Hacker's count.

No question is made by the affidavit as to the termination of the contract or the right of plaintiffs to return the patterns when they did return them. The judgment of the court below is just and equitable, and is affirmed.

*Affirmed.*